UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

**CASE NO:**

PETER DIMITROPOULOS

    Plaintiff,

v.

LAWRENCE ELIOT BLACKE and
LAW OFFICES OF LAWRENCE E. BLACKE, P.A.,

    Defendants.
_____/

## **COMPLAINT**

Plaintiff, PETER DIMITROPOULOS ("Plaintiff") hereby sues LAWRENCE ELIOT BLACKE ("Blacke") and LAW OFFICES OF LAWRENCE E. BLACKE, P.A. ("Firm") and states as follows:

    1.    PETER DIMITROPOULOS is an individual and resident of Canada.

    2.    Blacke is an attorney who is licensed to practice law in the State of Florida, and he may be served at 3326 NE 33rd St., Fort Lauderdale, FL 33308-7110.

    3.    The Firm is a Florida Corporation with its principal place of business located at 3326 NE 33rd St., Fort Lauderdale, FL 33308-7110.

    4.    Subject matter jurisdiction is proper in this Court under 28 U.S.C. § 1332 because it involves claims of citizens of a foreign state and citizens of the State of Florida, and the amount in controversy exceeds $75,000.00.

    5.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(1) because Blacke and the Firm practice in the Southern District of Florida, and pursuant to 28 U.S.C.

§ 1391(b)(2) because all or a substantial part of the events or omissions giving rise to the claims in this lawsuit occurred in the Southern District of Florida.

6. This is an action for damages where the matter in controversy exceeds $75,000.00.

7. Plaintiff hired a Blacke and the Firm for a real estate closing on Plaintiff's property in Broward County, Florida.

8. Plaintiff sold the property in Broward County for $400,000.00.

9. Plaintiff designated his daughter Kally Dimitropoulos ("Kally") as his representative to discuss the transaction with Blacke and the Firm.

10. At all times material hereto, Kally communicated with Blacke and the Firm regarding the closing on Plaintiff's property.

11. The signature block for Kally's emails contained both her email address and her telephone number with a 416-area code.

12. In matters involving the bank account, Kally copied her sister Stacy Dimitropoulos ("Stacy"), another one of Plaintiff's daughters.

## BLACKE USES NON-LAWYERS FOR TRANSACTION

13. Non-lawyers Nicole Jacobson ("Jacobson") and Paulette Woodside ("Woodside") handled many of the details of the closing by communicating with Kally.

14. Blacke was rarely copied on the emails between Kally, Jacobson, and Woodside.

15. On December 30, 2021, Woodside sent Kally an email asking for the wiring instructions to send the proceeds from the closing.

16. On December 30, 2021, Kally replied to Woodside's email by forwarding a message from Stacy with the information on a bank account at the Royal Bank of Canada ("RBC").

17. On January 3, 2022, Woodside wrote to Stacy and Kally asking for a "swiss code" needed to send the wire transfer.

18. Blacke was not copied on Woodside's January 3, 2022 email asking for a "swiss code."

19. Kally replied to Woodside's email asking if she was seeking a SWIFT code.

20. SWIFT stands for the Society for Worldwide International Financial Telecommunications.

21. A SWIFT code is a standard format for a business identifier code that is used for transferring funds.

22. Had Blacke been copied on Woodside's email and/or had Blacke reviewed the email prior to the email being sent, Blacke would have realized the error in calling the SWIFT code a swiss code.

23. Woodside later clarified that her use of "swiss code" was a mistake and that she intended to use SWIFT code.

24. On January 3, 2022, Stacy sent an email providing Woodside with RBC wiring instructions, including RBC's SWIFT code.

25. On January 5, 2022, Woodside wrote to Stacy and Kally stating that the wire was returned as having the wrong account number.

26. Blacke was not copied on Woodside's January 5, 2022 email regarding the rejection of the wire transfer.

27. On January 5, 2022, Kally provided Woodside with a screenshot showing the banking information for the RBC bank account.

28. On January 6, 2022, Woodside sent Kally another email stating that another wire was sent.

29. Blacke was not copied on Woodside's January 6, 2022 email regarding the second attempted wire transfer.

30. On January 7, 2022, Jacobson sent Kally an email stating that the wire transfer was rejected for a second time.

31. Blacke was not copied on Woodside's January 7, 2022 email regarding the rejection of the second wire transfer.

32. Kally responded asking Jacobson to discuss the wire transfer issues with Stacy.

33. On January 11, 2022 at 10:00 AM, Kally sent Woodside and Jacobson an email, with a copy to Stacy, that included a screen shot of the RBC account information for the wire transfer.

34. On January 11, 2022 at 11:30 AM, Woodside sent Kally, Stacy, and Jacobson an email stating that she did not have the account number to send the wire.

35. Blacke was not copied on Woodside's January 11, 2022 email regarding the account number for the wire.

36. On January 11, 2022 at 11:48 AM, Woodside sent Kally, Stacy, and Jacobson an email stating "Never mind Kally, we got the banking information", which included the screen shot showing the RBC account information for the wire transfer.

4

37. On January 12, 2022, Jacobson sent an email to Kally, Stacy, and Woodside with a purported wire transfer confirmation showing a wire in the amount of $380,874.23.

38. Blacke was not copied on Jacobson's January 11, 2022 email regarding the wire transfer confirmation.

**THE FIRM WIRES MONEY TO A CRIMINAL BASED ON A SPOOFED EMAIL**

39. Unbeknownst to Plaintiff, on January 11, 2022, a hacker sent an email to Woodside and Jacobsen pretending to be Kally ("Spoof Email").

40. The Spoof Email used a similar email address for Kally by adding the number "1" to the end of Kally's actual email address.

41. The Spoof Email used a phone number for Kally that had a 902-area code instead of Kally's actual area code (416).

42. The phone number for Kally on the Spoof email was fictitious.

43. The Spoof Email used am email address that was similar to the address for Stacy by replacing an "i" in the domain name with an "l".

44. The Spoof Email instructed Jacobsen and Woodside to wire the proceeds from Plaintiff's closing to a bank account at Bank of America belonging to "LUGO BLITZ ENTERPRISE INC" with an address located at 303 E 57th St. Apt 28B, New York, NY 10022.

45. An internet search of the address for "LUGO BLITZ ENTERPRISE INC", reveals that it is a business registered to Esmerari Lugo Ramirez with an address of 770 Garden St Apt 6A, BRONX, NY, 10460.

46. An internet search of the address for 303 E 57th St. Apt 28B, New York, NY 10022, reveals that it is an apartment that was listed for sale at the time of the Spoof Email.

47. At no time prior to the Spoof Email did Plaintiff, Kally, or Stacy indicate that they had an account at Bank of America.

48. At no time prior to the Spoof Email did Plaintiff, Kally, or Stacy indicate that they were associated with Lugo Blitz Enterprise Inc.

49. Blacke and the Firm either knew or should have known that the Spoof Email was not associated with Plaintiff, Kally, or Stacy.

50. As a result of Blacke and the Firm making the unauthorized wire of the funds to a nonparty, Plaintiff did not receive the funds from the closing of his property.

51. Blacke and the Firm were aware Plaintiff intended to use the funds from the transaction to purchase another property.

52. According to Blacke, his bank's security officer and the U.S. Secret Service notified Blacke of the error on January 11, 2022.

53. Blacke and the Firm claimed that there was a criminal investigation into the spoofed email and the wire.

54. On March 7, 2022, Blacke submitted a claim to his insurance carrier in the amount of $380,874.23.  A copy if attached as **Exhibit 1**.

55. On March 11, 2022, Blacke sent a text message to Plaintiff's representative claiming that he recovered $51,243.78.

56. Plaintiff demanded that Blacke return the $51,243.78 that was recovered.

57. Blacke did not immediately return the $51,243.78 to Plaintiff.

6

58. Plaintiff's representatives continued to demand that Blacke return the proceeds of the sale to Plaintiff.

59. Blacke and the Firm refused to wire the proceeds from the sale of the property to Plaintiff by citing to an ongoing investigation and insurance claim.

60. On June 13, 2022, Plaintiff's representative wrote to Blacke asking for details on the amounts recovered.

61. On June 23, 2022, Blacke provided a check in the amount of $95,382.28 to Plaintiff, which represented "a partial recovery of the proceeds of the sale" of Plaintiff's apartment.

62. The $95,382.28 check represented the following recoveries:

   a. $79,138.50 from the Firm's Cyber Insurer, which represented the policy limit of $100,000.00 less the insurers costs for forensic analysis of the claim and legal fees.

   b. $13,243.78, which represented Bank of America's claw back of $51,243.78 less $38,000.00 that was sent to the IRS under the FRIPTA reporting requirement.

63. Blacke and the Firm have not offered to reimburse Plaintiff the proceeds of the sale, other than what was recovered from Bank of America and the insurance carrier.

64. Rule 5–1.1 of the Rules Regulating the Florida Bar permits Blacke to use his own funds to replenish his trust account in the event of a shortage.

65. Upon information and belief, Blacke has not used his own funds to replenish the shortage caused by the unauthorized wiring of Plaintiff's funds to a third-party.

7

66. Blacke and the Firm were negligent by not having proper procedures in place that allowed the non-lawyers handling the closing to be spoofed, by transferring the proceeds from the sale of Plaintiff's property to an unauthorized third party, by not noticing the differences in the email addresses for Kally and Stacy, by not noticing the differences in the bank account details between Plaintiff's RBC bank and the Bank of America account, by not noticing the telephone number differences for Kally, by not checking the account holder details for the Bank of America account subject to the wire, not having proper insurance in place in the event of a cyber loss, not replenishing the Firm's trust account when there was a shortage caused by the wiring of the funds to a third-party, and by generally allowing the non-lawyers to get spoofed into wiring hundreds of thousands of dollars of Plaintiff's money to a non-party.

67. All conditions precedent to maintaining this action have been performed, excused, and/or have been waived.

## COUNT I – PROFESSIONAL NEGLIGENCE

68. Plaintiff realleges the allegations set forth in paragraphs 1 through 62 above and incorporates them as if fully stated herein.

69. Blacke and the Firm owed Plaintiff a duty of care to meet their professional obligations in handling the closing on Plaintiff's property.

70. Blacke and the Firm breached their duty of care to Plaintiff by, among other things, failing to supervise non-lawyer staff, having non-lawyers perform legal functions without proper supervision, failing to have the proper computer security in place to prevent spoofing and hacking, failing to notice the Spoof Email was not associated with the Plaintiff or their representatives, failing to contact Plaintiff or their representatives by

phone to ensure that the wire transfer was going to the correct bank, failing to notice that Plaintiff had no bank account at Bank of America, sending a wire transfer to an entity not associated with the Plaintiff, and failing to have proper safeguards in place regarding the handling of client funds and wire transfers.

71.     Blacke and the Firm were grossly negligent in failing to transfer the sale proceeds to Plaintiff and instead transferring them to an unauthorized non-party.

72.     As a direct and proximate result of Blacke and the Firm's negligence, Plaintiff suffered damages.

WHEREFORE, Plaintiff demand judgment against Blacke and the Firm for damages, punitive damages, pre-judgment interest, costs, and such other relief as this Court deems just and proper.

Dated September 29, 2022

Respectfully submitted,

By: /s *J. Chris Bristow*
**J. CHRIS BRISTOW, ESQ.,**
Florida Bar No. 068304
**CRITTON, LUTTIER & COLEMAN LLP**
303 Banyan Blvd
Suite 400
West Palm Beach, FL 33401
Telephone: 561-842-2820
Facsimile: 561-844-6929
Attorneys for the Plaintiff
JCBristow@lawclc.com
smcdonald@lawclc.com